# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF VIRGINIA

### Alexandria Division

| | |
|---|---|
| **Donald Colby Hoskinson,** ) | |
|     **Petitioner,** ) | |
| ) | |
| v. ) | 1:22cv1406 (AJT/WEF) |
| ) | |
| **Department of Corrections, et al.,** ) | |
|     **Respondent.**[1] ) | |

## MEMORANDUM OPINION AND ORDER

Donald Colby Hoskinson ("Petitioner" or "Hoskinson"), a Virginia inmate proceeding *pro se*, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging the validity of his November 10, 2016 convictions in the Circuit Court of Mecklenburg County, Virginia for rape, abduction, forcible sodomy, and indecent liberties. *Commonwealth v. Hoskinson*, Case Nos. CR15-207-02, 04, 08, 09.[2] The Respondent filed a Rule 5 Answer and a Motion to Dismiss with supporting briefs and exhibits [Dkt. Nos. 15-17]. Petitioner was advised of his right to file responsive materials pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975) and Local Rule 7(K) to the motion to dismiss, [Dkt. No. 18], but he did not file a response.[3] The matter is now ripe for disposition, and for the following reasons, the respondent's Motion to Dismiss is granted and the petition dismissed with prejudice.

---

[1] Petitioner names the Commonwealth of Virginia, the Department of Corrections, and Harold W. Clarke, as respondents in this matter. As respondent notes in its brief in support, only Director Clarke is a proper respondent and the docket will be so amended.

[2] Citations to the state circuit court's manuscript record are designated, "CCT at ___."

[3] Petitioner sent a letter to the Court filed June 29, 2023, in which he admits he received the respondent's brief in support of the motion to dismiss and exhibits. [Dkt. No. 19]. His letter, however, does not contest the respondent's motion to dismiss, but instead requests subpoenas for police files, school records, and other documents. All of the documents requested were available prior to the entry of his *Alford* pleas in 2016. [Dkt. No. 14]. The respondent attached the plea and sentencing orders to his brief, as well as two proceedings Hoskinson filed *pro se* in the Supreme Court of Virginia and his plea and sentencing transcripts. [Dkt. Nos. 16-1, 16-4 through 16-7].

## I. Procedural History

A grand jury sitting in the Circuit Court of Mecklenburg County indicted Hoskinson for ten felonies: two counts of abduction with intent to defile, in violation of Virginia Code § 18.2-48; one count of abduction to extort money, in violation of Virginia Code § 18.2-48; three counts of indecent liberties with a child, in violation of Virginia Code § 18.2-370; two counts of rape, in violation of Virginia Code § 18.2-61; one count of use of a firearm, in violation of Virginia Code § 18.2-53.1; and one count of sodomy, in violation of Virginia Code § 18.2-67.1. Hoskinson, his counsel, and the prosecutor all signed a plea form entitled "Alford Plea of Guilty to a Felony." (CCT at 104-05). The agreement capped his active sentence at seventeen years, and required that he plead guilty, pursuant to *North Carolina v. Alford*, 400 U.S. 25, 32 (1970), to rape, abduction, forcible sodomy, and indecent liberties, which he did. Case Nos. CR15-207-02, 04, 08, 09; [Dkt. No. 16-1 at 1-2]. The remaining six felonies were terminated by the entry of a *nolle prosequi*. (CCT at 110-13).

Prior to the entry of the pleas, the circuit court conducted a thorough colloquy and found the pleas were knowingly and voluntarily entered, and the court accepted the plea agreement. (CCT at 116-17; 4/21/16 Tr. 235-66). After accepting his pleas, the court ordered a psychosexual evaluation. (*Id.* at 117). The circuit court sentenced Hoskinson on November 7, 2016, in accordance with his plea agreement, to a combined term of 120 years in prison with all but 16 years suspended. [Dkt. No. 16-1 at 3-5]. The circuit court entered judgment on November 10, 2016. (CCT at 144-46).

In his federal habeas petition, Hoskinson admits that he did not file a direct appeal to either the Court of Appeals or the Supreme Court of Virginia. [Dkt. No. at 2]. The respondent found no

2

record of Hoskinson having filed a petition for writ of habeas corpus in either the Circuit Court for Mecklenburg County or in the Supreme Court of Virginia.[4]

## II. Federal Petition

On November 21, 2022, Hoskinson filed the instant petition for writ of habeas corpus.[5] He alleges the following two claims:

> (1) Prosecutorial Misconduct: "tainted fruits of poisonous tree, denial of fair trial, denial of cross-examination for the defense, allowing falsified hearsay rule." [Dkt. No. 9 at 5].[6]
> (2) Ineffective assistance of counsel: "denial of discovery, denial to prepare an adequate defense." [*Id.* at 7].[7]

## III. Statute of Limitations

A petition for a writ of habeas corpus must be dismissed if filed later than one year after (1) the judgment becomes final; (2) any state-created impediment to filing a petition is removed; (3) the United States Supreme Court recognizes the constitutional right asserted; or (4) the factual predicate of the claim could have been discovered with due diligence. 28 U.S.C. § 2244(d)(1)(A)-(D). Hoskinson does not allege any state impediments, a newly recognized constitutional right, or

---

[4] Hoskinson sent a letter to the circuit court clerk asking for his transcript but has not filed a state habeas petition. [Dkt. No. 16-3]. In his amended petition, Hoskinson states the only post-conviction application he has filed is a clemency petition. He also filed a motion in the circuit court criminal action on July 12, 2021, in which he sought copies of various pleadings and documents from the criminal trial proceedings, reports, transcripts, police reports, and various court documents. CCT at 157-65. The motion was denied on July 12, 2021 and Hoskinson filed an appeal. The Supreme Court of Virginia dismissed the appeal finding that the order appealed from was not an appealable order. *Id.* at 179.

[5] Hoskinson's original petition was dated November 21, 2022 and filed on December 7, 2022. [Dkt. No. 1]. On December 14, 2022, the Court entered an order that found the habeas petition did not contain any claims and directed Hoskinson to file an amended petition. Hoskinson's amended petition was sent to the Court on March 15, 2023. [Dkt. No. 9 at 19].

[6] Hoskinson states in his amended petition that he has previously filed a federal habeas petition in the United States District Court for the Eastern District of Virginia. [Dkt. No. 9 at 6]. A search of the docket does not reveal any previous federal has petition. Hoskinson has, however, filed two civil § 1983 cases: *Hoskinson v. Latif*, No. 1:22cv717-AJT-JFA (E.D. Va. Oct. 6, 2022) (dismissed without prejudice and clerk provided petitioner with § 2254 form); *Hoskinson v. Davis et al.*, No. 1:21cv1320-AJT-IDD (E.D. Va. Apr. 28, 2023) (granting summary judgment on a claim of deliberate indifference). Accordingly, Hoskinson's reference to a "previously filed" petition appears to be a reference to the original petition he filed on December 7, 2022.

[7] Petitioner challenges the circuit court's determination that his pleas were entered "freely, intelligently and voluntarily made" and that Hoskinson understood "the nature of the charges against [him] and the consequences of your pleas." (CCT at 259). However, in his prayer for relief Petitioner only seeks a modification of his sentence.

newly discovered evidence. Thus, his limitations period must be calculated from the date on which his convictions became final. *See Gonzalez v. Thaler*, 565 U.S. 134, 149 (2012) (holding that under § 2244(d)(1)(A) a judgment becomes final "when the time for pursuing direct review in [the Supreme Court], or in state court, expires").

Here, Petitioner did not appeal his convictions and filed no petition for writ of habeas corpus in state court. Supreme Court of Virginia Rule 5A:6 provided Hoskinson 30 days to file a notice of appeal from the November 10, 2016 final order, but he did not perfect and appeal his convictions.[8] The federal statute of limitations, therefore, began to run on Monday, December 12, 2016. Absent statutory tolling for a properly filed state collateral proceeding, the statute of limitations expired on December 12, 2017. Hoskinson did not file any state collateral proceedings before the federal statute of limitations expired.[9] Petitioner did not file the instant habeas petition until, at the earliest, November 21, 2022, well past the expiration of the federal statute of

---

[8] Hoskinson sent a letter to the circuit court dated January 9, 2017, which was well past the thirty period in which he could note an appeal. (CCT at 147-48). In the letter he complained about his retained counsel and stated he would "like to appeal my counsel." (<u>Id.</u>). At the end of the letter, Hoskinson stated he "would like to appeal his case due to ineffective assistance of counsel." (*Id.* at 148). But Hoskinson apparently did not pursue the matter any further.

[9] After the federal statute of limitations had already expired, Petitioner filed two untimely civil actions in the Supreme Court of Virginia. *See* Record Nos. 210823, 190340. In Record No. 210823, Hoskinson stated in his petition for appeal, dated August 24, 2021, that he was appealing a July 12, 2021 order of the Mecklenburg Circuit Court, which had denied him several documents. [Dkt. No. 16-5 at 9-13]. The Supreme Court of Virginia dismissed the appeal on February 10, 2022, finding that it "lack[ed] of appellate jurisdiction." [*Id.* at 36]. Record No. 190340, was a petition for a writ of mandamus, dated January 17, 2019, that sought a copy of his defense attorney's file. [Dkt. No. 16-4 at 4]. The Supreme Court of Virginia dismissed the petition for a writ of mandamus on June 27, 2019 finding that "the petition was not timely filed'" [*Id.* at 23] (citing Va. Code § 8.01-644.1). Neither of these pleadings sought "judicial review of a judgment" but instead appear to be primarily complaints about not receiving records. *Wall v. Kholi*, 662 U.S. 545, 552 (2011) (defining "other collateral review" for purposes of tolling under § 2244(d)(2) as "judicial review of a judgment in a proceeding that is not part of direct review."); *Branham v. Ignacio*, 83 F. App'x 208, 209 (9th Cir. 2003) (concluding that a mandamus petition seeking to compel document production did not toll the limitations period); *Thomas v. Tucker*, No. 4:10-276, 2011 U.S. Dist. LEXIS 151708, at *4-5 (N.D. Fla. Dec. 7, 2011) (finding that a petition for writ of mandamus that sought only discovery was not an application for collateral review of the underlying criminal judgment); *see also Shea v. Clark*, 2023 U.S. Dist. LEXIS 23216, at *13 at n. 8 (E.D. Va. Feb. 10, 2023) (mandamus seeking reopening of law library did not toll federal limitations period).

limitations period.[10] 28 U.S.C. § 2244(d)(1)(A). Accordingly, his petition is barred from review unless he demonstrates some equitable exception.

A habeas petitioner may be permitted to file a federal habeas petition out of time if he can establish that he is entitled to equitable tolling. Equitable tolling is available in federal habeas only where the petitioner shows: (1) he pursued his rights diligently; and (2) some extraordinary circumstance prevented him from timely filing her habeas petition. *See Holland v. Florida*, 560 U.S. 631, 649 (2010). "Equitable tolling is an exceedingly narrow window of relief." *Finch v. Miller*, 491 F.3d 424, 427-28 (8th Cir. 2007) (citation omitted). Indeed, equitable tolling is available only in "rare instances where – due to circumstances external to the party's own conduct – it would be unconscionable to enforce the limitation period against the party and gross injustice would result." *Green v. Johnson*, 515 F.3d 290, 304 (4th Cir. 2008). The petitioner "bears the burden of demonstrating that he is entitled to equitable tolling." *Vroman v. Brigano*, 346 F.3d 598, 604 (4th Cir. 2003).

A claim of actual innocence may be used to excuse a procedural default or toll the statute if petitioner can make a compelling showing of innocence. *See McQuiggin v. Perkins*, 569 U.S. 383, 390 (2013). *McQuiggin* recognized that "actual innocence, if proved, serves as a gateway through which a petitioner may pass" to bring claims after the statute of limitations expires. *Id.* at 386. "[A] credible showing of innocence may allow a prisoner to pursue his constitutional claims . . . on the merits notwithstanding the existence of a procedural bar to relief." *Id.* at 390. However, "claims of actual innocence are rarely successful," *Schlup v. Delo*, 513 U.S. 298, 324 (1995), and "should not be granted casually," *Wilson v. Greene*, 155 F.3d 396, 404 (4th Cir. 1998). The standard of review for demonstrating innocence under *Schlup* is a demanding one. It requires that

---

[10] November 21, 2022 is the date the original habeas petition was dated. *See Houston v. Lack*, 487 U.S. 266, 276 (1988).

"[t]he gateway should open only when a petition presents 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'" *McQuiggin*, 569 U.S. at 401 (quoting *Schlup*, 513 U.S. at 316). In order to demonstrate the fundamental miscarriage of justice exception to the federal statute of limitations, a petitioner must present new evidence to support his claim of actual innocence, and "must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Schlup*, 513 U.S. at 327.

The new evidence must be "reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Id.* at 324. Thus, to accompany any actual innocence claim, the petitioner must put forward new, credible evidence that supports his assertion. The new evidence must be evaluated with any other admissible evidence of guilt. *Wilson*, 155 F.3d at 404-05. The new evidence must do more than undermine the finding of guilt; it must affirmatively demonstrate innocence. *Phillips v. Ferguson*, 182 F.3d 769, 774 (10th Cir. 1999). If a petitioner meets the burden of producing new, truly reliable evidence of his or her innocence, the Court then considers "'all the evidence,' old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under 'rules of admissibility that would govern at trial'" and determines whether the petitioner has met the standard for a gateway claim of innocence. *House v. Bell*, 547 U.S. 518, 538 (2006) (quoting *Schlup*, 513 U.S. at 327-28). The Court must determine "whether 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *Sharpe v. Bell*, 593 F.3d 372, 377 (4th Cir. 2010) (quoting *Schlup*, 513 U.S. at 327-28). Hoskinson's allegations fail to satisfy either of these requirements.

In his petition, Hoskinson sets out what appears to be a disjointed argument that is largely conclusory and does not indicate whether it is based upon personal knowledge or what other source, if any. He argues that his attorney did not investigate his case, obtain records, determine the victim's whereabouts at the time of the offenses, and failed to give Hoskinson his file.[11] He faults the state courts for not giving him records, asserts the victim and his ex-wife could not get their "stories straight," claims the prosecutor failed to confirm the victim's whereabouts at the time of the offenses, contends that his ex-wife had taken all of his money and assets, denies he abducted the victim, and asserts he was at work at the time of one of the offenses. [Dkt. No. 9 at 14-18]. His argument does not set out any "newly discovered evidence," and he discusses facts and evidence he either had personal knowledge of or was readily available prior to the entry of his plea. To the extent that this argument can be liberally construed as an argument asking the Court to toll the statute of limitations, it fails to satisfy the stringent requirements of this exception.

In his letter following the respondent's motion to dismiss, Hoskinson alleges a scheme by his ex-wife and the victim in which he says they "set[] me up to blind side me to take my life savings." [Dkt. No. 19]. He also complains that the state court clerk's office, his trial counsel, and respondent's counsel will not provide him with "Discovery." [*Id.*]. Hoskinson, however, does not provide any evidence, or even a proper proffer of what the evidence is and who allegedly had it— much less when he became aware of the alleged evidence and what efforts he made to obtain it. The motion he filed to obtain "Documents and Reports" in state court was, at best, conclusory. (CCT at 157-61). Hoskinson's motion sought copies of his arrest warrants and indictments, bill of particulars, police reports, the presentence report, judge's notes from the preliminary hearing,

---

[11] In his state mandamus proceeding, *Hoskinson v. Latif*, Record No. 190340 (Va. June 27, 2019), Hoskinson stated in his petition that his trial counsel, Latif, had the discovery from the prosecutor, which included "(*Brady* materials), police reports, witness statements, (specifically statements from Michael G. Crouse)." [Dkt. No. 16-4 at 4].

7

preliminary hearing transcripts, sentencing transcripts, sentencing order, and lab and forensic reports. He then asserted that the documents were "essential" to the preparation of any post-conviction petition and the particularized need was "to ensure that no one is misquoted." (CCT at 159). He also argued they were necessary "to bring out the numerous errors" made by the prosecutor, defense counsel, and the court. (*Id.*).[12] Hoskinson's desires an investigation because he believes his trial counsel did not investigate his case and that the prosecutor did not provide his trial counsel with "police reports or counsel never checked." [Dkt. No 9 at 17-18]. Hoskinson, however, offers no concrete evidence of innocence, much less the kind of compelling evidence to satisfy the *Schlup* standard.

First, the record establishes that Hoskinson entered an *Alford* plea, [Dkt. No. 16-6 at 17],[13] and although "[p]leading guilty does not entirely preclude a petitioner from claiming actual innocence at habeas proceedings . . . guilty pleas and partial confessions 'seriously undermine' the claim." *Clark v. Clarke*, 2017 U.S. Dist. LEXIS 29054, at *9-11 (W.D. Va. Mar. 1, 2017) (citing *Chestang v. Sisto*, 522 F. App'x 389, 390 (9th Cir. 2013)). *See also Smith v. Warden*, 2018 U.S. Dist. LEXIS 106192, at *6-7 (W.D. Va. June 26, 2018) (holding petitioner's actual innocence gateway claim was seriously undermined by his guilty plea); *Copeland v. Clarke*, 2018 U.S. Dist. LEXIS 166728, at *26-27 (E.D. Va. July 3, 2018) (considering petitioner's guilty plea as a factor

---

[12] *See United States v. Montgomery*, 806 F. App'x 187, 188 (4th Cir. 2020) ("Copies of transcripts and court records may be provided to an indigent litigant at government expense upon a showing by the litigant of a particularized need for the documents. *See Jones v. Superintendent, Va. State Farm*, 460 F.2d 150, 152-53 (4th Cir. 1972). Such a litigant, however, is not entitled to free copies 'merely to comb the record in the hope of discovering some flaw.' *United States v. Glass*, 317 F.2d 200, 202 (4th Cir. 1963)."). The motion Hoskinson's filed in the circuit court, which did not include a statement of particularized need, was denied. The *in forma pauperis (IFP)* statement he filed in the circuit court on July 6, 2021, which accompanied his motion, indicated he had a considerable sum of cash on hand. (CCT at 164).

[13] "Virginia courts 'treat *Alford* pleas as having the same preclusive effect as a guilty plea.'" *Ramsey v. Commonwealth*, 779 S.E.2d 241, 243 n.1 (Va. App. 2015) (citation omitted). *See also Burket v. Angelone*, 208 F.3d 172, 191 (4th Cir. 2000) ("Absent clear and convincing evidence to the contrary, [a defendant] is bound by the representations he made during the plea colloquy."). A trial court may accept an *Alford* plea when: (1) the defendant "intelligently concludes that his interests require entry of a guilty plea;" and (2) "the record before the judge contains strong evidence of actual guilt." *United States v. Mastrapa*, 509 F.3d 652, 659 (4th Cir. 2007) (quoting *Alford*, 400 U.S. at 37-39). The plea colloquy satisfies these requirements.

8

in finding that petitioner had not met the *Schlup* standard). "Additionally, guilty pleas give rise to several issues under *Schlup*; there is no fact-finder (judge or jury) finding, the record is normally abbreviated, [and] the state did not 'present' evidence in the typical fashion to establish guilt beyond a reasonable doubt." *Smith*, 2018 U.S. Dist. LEXIS 106192, at 7. Moreover, given his *Alford* plea, to establish an actual innocence gateway Hoskinson must not only show that he was factually innocent of the four offenses to which he entered an *Alford* plea, but also to the other charges that were terminated by *nolle prosequi*. *Id.* at 624 ("In cases where the Government has forgone more serious charges in the course of plea bargaining, petitioner's showing of actual innocence must also extend to those charges.").

Next, Hoskinson's unsupported allegations, aside from not being brought up during the trial proceedings or in any state post-conviction proceedings, at best, *might* impeach the victim or another witness. A petitioner's attacks on witnesses' credibility are insufficient to establish actual innocence for the purposes of excusing a procedural bar. *See In Re Byrd*, 269 F.3d 561, 577 (6th Cir. 2001) (holding that petitioner's "renewed attacks on [a] trial witness['s] . . . credibility . . . do not provide proof of 'actual innocence' sufficient to excuse an abuse of the writ) (citing *Clark v. Lewis*, 1 F.3d 814, 824 (9th Cir. 1993) (concluding the allegation that prosecution witness could have been impeached by allegedly withheld evidence did not constitute a credible claim of "actual innocence" sufficient to show that the petitioner was actually innocent)); *see also Calderon v. Thompson*, 523 U.S. 538, 563 (1998) (stating newly discovered impeachment evidence, which is "a step removed from evidence pertaining to the crime itself," "provides no basis for finding" actual innocence); *Sawyer v. Whitley*, 505 U.S. 333, 349 (1992) (holding newly discovered impeachment evidence "will seldom, if ever," establish actual innocence). Evidence that merely impeaches a witness is thus insufficient to support a claim of actual innocence sufficient to justify

9

tolling the one-year limitations period. *See Sherratt v. Friel*, 275 F. App'x 763, 768 (10th Cir. 2008) (noting that "new evidence must affirmatively demonstrate [ ] [the petitioner's] innocence, not simply undermine the finding of guilt against him").[14]

Lastly, the prosecutor's summary of the evidence that would have been presented at trial was overwhelming.

> Between the date of August 1st, 2000, and June 30th, 2001, the victim, N.C., was told by her stepfather, [Hoskinson], that . . . she [] needed to go with him to check some salt blocks on some hunting paths right around the residence where they were currently residing . . . in Mecklenburg County, Virginia.
> ***
> As they were riding down cut-over paths and logging paths, they stopped, the defendant stopped the truck. At this time N.C. would testify that the defendant had a firearm in his possession . . . [and that] Hoskinson[] began accusing her of having a sexual relationship with a boy in her class. The victim was between the ages of thirteen and fourteen at the time of this first offense. And the defendant became very upset about that.
>
> The defendant . . . pointed the firearm at N.C. and ordered her to start undressing . . . . [A]fter she was undressed, the defendant forced himself on top of her, [and] laid the firearm within arm's reach of a logging path next to the truck. A[t] that point [] he penetrated her with his penis in her vagina.
>
> She would state that this act was against her will and under the threat of force and intimidation. She would state that this was an act against her will and this was not a consensual encounter at all.
> ***
> The Commonwealth would have offered the testimony of two additional witnesses that were also at this party, Miles Galliger [] and Christine DeLorenz [], who were both present.
>
> In the early morning hours of January 1st, 2003, the victim [about fifteen years of age at this time] and those two individuals would state that they observed this defendant banging on the door of this home . . . in a fit of rage . . . .
>
> He demanded to know where the victim was and at this time began to enter into the home berating her verbally, cussing at her, screaming and threatening her.

---

[14] Hoskinson's allegations are also inconsistent with the plea colloquy, where when asked by the trial court whether he was satisfied with the services of his counsel, Hoskinson responded, "Most positive." (4/21/16 Tr. at 24). Moreover, that he asks the Court only to "modif[y] [his] sentence" [Dkt. No. 9 at 19], despite claiming he was "set-up," is confusing and illogical.

They would state that they observed the defendant physically pick up the victim and physically escort her, carry her out of the residence there.

The victim would state that the defendant . . . was enraged that she had gone out that night and that he carried her in a vehicle down another one of the logging paths within a few miles of the home . . . and on that occasion parked the truck off the road and subjected this victim to another encounter of rape, which she would state was once again done against her will under . . . a threat of violence, force and intimidation.

She would state at that time that the victim was penetrated by this defendant's penis against her will.

The Commonwealth would further offer evidence of an offense that occurred between the dates of August 1st, 2004, and November 30th of 2004. N.C. would state that . . . on this particular occasion the defendant . . . told the victim that she was needed to dump some trash and that also he [] wanted to check out some other hunting spots.

The victim would state that she knew . . . after undergoing multiple sexual assaults . . . that she was going to be subjected to another sexual assault. She did not want to go with the defendant at this time, however, he made her go.

And at this particular time, he ended up taking her down . . . [a] path [] onto the property belonging to a neighbor . . . by the name . . . Andre [] Bennett.

[W]hen the truck came to a stop, the defendant unzipped his pants, pulled his pants down and told the victim she needed to perform oral sex on him and said specifically [that] if she did not do that, then he was going to penetrate her vaginally again.

Based on the situation, and once again . . . under the threat and force and against her will, the victim was forced to perform oral sex on this defendant. She would state that his penis penetrated her mouth and that prior to exposing his genital parts to her, he told her to perform oral sex on him.

The victim would state that she was under age eighteen years of age at this time and the defendant[] . . . [was] over the age of eighteen at this particular time.

At this particular moment during the act of oral sex . . . Andre Bennett . . . was walking his dog . . . and observed the vehicle driven by and operated by this defendant on his propert[y].

Mr. Bennett was wondering what the defendant — he knew this vehicle to be driven by this defendant and walked up to the vehicle to investigate what he was doing there. He would state that the dog barked and it startled Mr. Hoskinson as well. And

>as the dog barked, he noticed the victim who he knew to be Mr. Hoskinson's stepdaughter's head pop up from the lap area of this defendant.
>
>Mr. Bennett would state the defendant was very nervous and startled and made some excuse about how he was there looking at an old house. However, he was pointed in the wrong direction to be looking at this house. He then stated . . . the defendant left the scene a very hurried manner and left.
>
>The victim would testify at this time that when Mr. Bennett walked up, she was ordered to be very quiet and not to say anything or that he was going to hurt her. So the victim said nothing at this time.
>
>The victim left the home shortly thereafter, after this last sexual assault. And several years later the defendant moved to Texas where he was residing in the backyard of the property owned by the victim's maternal grandparents.
>
>The victim began to disclose throughout the years to multiple different people, and at this time around the time of June of the year 2015, the victim's mother was made aware of these allegations. The victim's mother, as well as the grandparents, her maternal grandparents, went out to the backyard of the location where the defendant was staying as well as the grandparents and confronted this defendant about these allegations.
>
>The defendant stated at this time, "The victim pulled down her pants and that's why I did it."
>
>The Commonwealth would have further offered evidence that he was confronted by this victim's fiancé in the year 2012 and that when he was confronted after that occasion, he told the victim's fiancé that, "Oh, she was mistaken, it's not me. It was another Donnie that was doing this to her."

[Dkt. No. 16-6 at 9-16].

Petitioner's actual innocence claim does not satisfy *Schlup's* demanding standard. *Schlup*, 513 U.S. at 316. There were corroborating witnesses, there has been no recantation, and petitioner's statements after the incidents became known were not that the victim had made up her allegations, but that the perpetrator was someone else. Accordingly, his federal habeas petition must be denied.

### IV. Exhaustion and Default

Even if the petition were not time-barred, it must be dismissed because the claims therein are simultaneously not exhausted and defaulted. "[A] federal court may not grant a writ of habeas corpus to a petitioner in state custody unless the petitioner has first exhausted his state remedies by presenting his claims to the highest state court." *Baker v. Corcoran*, 220 F.3d 276, 288 (4th Cir. 2000). Further, the petitioner must present to the state court the same operative facts and the same controlling legal principles that he seeks to present to the federal court. *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995); *Kasi v. Angelone*, 300 F.3d 487, 501-02 (4th Cir. 2002).[15] Failure to do so "deprive[s] the state courts of an opportunity to address those claims in the first instance." *Coleman v. Thompson*, 501 U.S. 722, 732 (1991). A petitioner must also present his federal claims to the appropriate state court in the manner required by the state court, so as to give the state court "a meaningful opportunity to consider allegations of legal error." *Vasquez v. Hillery*, 474 U.S. 254, 257 (1986). A state prisoner does not "fairly present" a claim for exhaustion purposes when the claim is raised in "a procedural context in which its merits will not be considered." *Castille v. Peoples*, 489 U.S. 346, 351 (1989).

"A claim that has not been presented to the highest state court nevertheless may be treated as exhausted if it is clear that the claim would be procedurally barred under state law if the

---

[15] Petitioner filed a motion in the circuit court criminal action on July 12, 2021, in which he sought copies of various pleadings and documents from the criminal trial proceedings, reports, transcripts, police reports, and various court documents. CCT at 157-65. The motion was denied on July 12, 2021 and Hoskinson filed an appeal. The Supreme Court of Virginia dismissed the appeal finding that the order appealed from was not an appealable order. *Id.* at 179. In addition, "[u]nlike other civil litigants, a § 2254 habeas petitioner 'is not entitled to discovery as a matter of ordinary course.' Instead, he must 'show good cause before he is afforded an opportunity for discovery.'" *Stephens v. Branker*, 570 F.3d 198, 213 (4th Cir. 2009) (quoting *Bracy v. Gramley*, 520 U.S. 899, 904 (1997); *Quesinberry v. Taylor*, 162 F.3d 273, 279 (4th Cir. 1998)). Good cause must include "specific allegations suggesting that the petitioner will be able to demonstrate that he is entitled to habeas corpus relief." *Stephens*, 570 F.3d at 213. "Speculation that additional information may exist" is not sufficient. *Id.* Hoskinson did not pursue state habeas proceedings, during which he could have sought discovery. He cannot now seek to expand the record and rely on matters that have never been provided to the state court.

petitioner attempted to present it to the state court." *Baker*, 220 F.3d at 288; *see Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998) (describing the procedural default doctrine as a "distinct but related limit on the scope of federal habeas review"). Simultaneous exhaustion and procedural default occur "when a habeas petitioner fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" *Breard*, 134 F.3d at 619 (quoting *Coleman*, 501 U.S. at 722. In that case, "the procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default." *Baker*, 220 F.3d at 288 (citation and quotation marks omitted).

As the record establishes, Hoskinson did not pursue a direct appeal[16] of his convictions, he did not file a state habeas petition, he has never presented his claims to the Supreme Court of Virginia. His claims are, therefore, deemed simultaneously exhausted and defaulted. Hoskinson also could not timely raise this claim in state habeas corpus. *See* Va. Code § 8.01-654 (A)(2) (claims must be raised within two years of final conviction in state court or one year from date a state appeal was final). If Hoskinson returned to state court and attempted to present his claims to the Supreme Court of Virginia in a state habeas petition, his claims would be deemed untimely pursuant to Virginia Code § 8.01-654(A)(2), which requires a habeas petition to be filed within either two years of the final judgment of trial or one year of the final disposition of direct appeal.[17]

---

[16] A direct appeal requires that a notice of appeal be filed within thirty days of the date the final order was entered in his criminal proceedings, which in Hoskinson's case was November 10, 2016. *See* Va. S. Ct. Rule 5A:6 (notice of appeal to be filed within 30 days).

[17] Virginia Code § 8.01-654(A)(2) is an adequate and independent bar that precludes federal review of a claim. *See Sparrow v. Dir., Dep't of Corr.*, 439 F. Supp. 2d 584, 588 (E.D. Va. 2006); *see, e.g., Baker v. Clarke*, 95 F. Supp. 3d 913, 917-18 (E.D. Va. 2015) ("Virginia Code § 8.01-654(A)(2) constitutes an adequate and independent state-law procedural rule, as it is a statutory rule that is not tied to the federal Constitution.") (citation omitted).

Federal courts may not review defaulted claims absent a showing of cause and prejudice or a fundamental miscarriage of justice, such as actual innocence. *Harris v. Reed*, 489 U.S. 255, 260 (1989). The existence of cause ordinarily turns upon a showing of (1) a denial of effective assistance of counsel, (2) a factor external to the defense which impeded compliance with the state procedural rule, or (3) the novelty of the claim. *See Coleman*, 501 U.S. at 753-54; *Clozza v. Murray*, 913 F.2d 1092, 1104 (4th Cir. 1990). A court need not consider the issue of prejudice in the absence of cause. *See Kornahrens v. Evatt*, 66 F.3d 1350, 1359 (4th Cir. 1995).

While a claim of ineffective assistance of counsel, in some circumstances, may be sufficient "cause" for a defaulted claim, *see Edwards v. Carpenter*, 529 U.S. 446, 451 (2000), such a claim of ineffective assistance of counsel supplies the requisite "cause" only where the petitioner raised the ineffectiveness argument as a cause for the defaulted substantive claim during his state habeas proceedings. *Powell v. Kelly*, 531 F. Supp. 2d 695, 723 (E.D. Va. 2008), *aff'd*, 562 F.3d 656 (4th Cir. 2009).[18]

> The requisite ineffective assistance, however, "is itself an independent constitutional claim" subject to the requirement of exhaustion in state court and to the doctrine of procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000) (emphasis in original); id. at 453 (holding that ineffective assistance claims asserted as cause for procedural default of other claims are themselves subject to procedural default rule); *see also Murray[ v. Carrier]*, 477 U.S. [478,] 488-89 [(1986)] (noting that "the exhaustion doctrine ... generally requires that a claim of ineffective assistance be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default").

*Swisher v. True*, 325 F.3d 225, 231 (4th Cir. 2003). Further, the record does not establish a factor external to the defense that impeded Hoskinson's compliance with the state procedural rules, and

---

[18] *See Pearson v. Clarke*, No. 1:21cv1270, 2022 U.S. Dist. LEXIS 186961, at *12 (E.D. Va. Oct. 12, 2022), *appeal dismissed*, No. 22-7277, 2023 U.S. App. LEXIS 9992 (4th Cir. Apr. 25, 2023) (noting unexhausted ineffective assistance of counsel claim "would be barred either under the successive writ statute in Virginia, Va. Code § 8.01-654(B)(2), if it was raised by a petition for a writ of habeas corpus in state court; or by Virginia's statute of limitations for habeas petitions, Va. Code § 8.01-654(A)(2)").

there is nothing novel about his claims.[19] Finally, Hoskinson's actual innocence fails to excuse his procedural default for the same reasons it fails to excuse his untimely filing; it does not satisfy the *Schlup* standard.[20]

### V. Motion for Discovery

Hoskinson has also sought discovery. Habeas petitioners in federal court are "not entitled to discovery as a matter of ordinary course." *Stephens v. Branker*, 570 F.3d 198, 213 (4th Cir. 2009) (citations omitted). And Rule 6 of the Rules Governing Section 2254 Cases, requires "reasons for the request" and "good cause," including "specific allegations suggesting that the petitioner will be able to demonstrate that he is entitled to habeas corpus relief." *Id.* Here, because the claims have already been defaulted and Hoskinson "has not shown cause and prejudice or fundamental miscarriage of justice permitting its consideration on federal habeas," he cannot demonstrate that discovery would entitle him to habeas relief, *Royal v. Taylor*, 188 F.3d 239, 249 (4th Cir. 1999), and his motion for discovery is denied.

### VI. Conclusion

For the foregoing reasons, it is hereby

**ORDERED** that Respondent's Motion to Dismiss, [Dkt. No. 15], be, and the same hereby is, GRANTED; and it is further

---

[19] Hoskinson mentioned ineffective assistance of counsel in the January 9, 2017 letter he filed with the circuit court. (CCT at 148).

[20] In addition, *Martinez v. Ryan*, 566 U.S. 1, 16 (2012), which excuses default of failure to exhaust ineffective assistance of counsel claims in certain circumstances, does not provide a basis to avoid the federal statute of limitations. *See Lambrix v. Sec'y Fla. Dep't Corr.*, 756 F.3d 1246, 1260, 1262 (11th Cir. 2014) (citing *Chavez v. Sec'y Fla. Dep't Corr.*, 742 F.3d 940, 946-47 (11th Cir. 2014)). Moreover, *Martinez* also does not apply to petitioner's claims because he never filed a state habeas petition. *Jones v. Pennsylvania Board of Probation and Parole et al.*, 2012 U.S. App. Lexis 15348, at *13-14 (3rd Cir. 2012), *cert. denied*, 568 U.S. 1167 (2013) (holding that the "*Martinez* analysis is inapplicable where the criminal defendant did not initiate any state collateral review proceeding whatsoever"); *Pullen v. Dir., Va. Dep't of Corr.*, No. 7:14cv211, 2015 U.S. Dist. LEXIS 3445, at *6 (W.D. Va. Jan. 13. 2015) (citing *Jones* and explaining that because petitioner "did not initiate a state habeas proceeding . . . he cannot benefit from the *Martinez* exception to default of his claims that trial counsel was ineffective"), *appeal dismissed*, 604 F. App'x 284 (4th Cir. 2015)).

**ORDERED** that the docket will be amended to list Harold W. Clarke, the Director of the Virginia Department of Corrections, as the proper party respondent in this matter, and the other respondents are DISMISSED; and it is further

**ORDERED** that the petition for habeas corpus relief pursuant to 28 U.S.C. § 2254, [Doc. No. 1], be, and the same hereby is, DISMISSED; and it is further

**ORDERED** that the Motion Requesting Records, [Doc. No. 14], be, and the same hereby is, DENIED.

To appeal this decision, petitioner must file a written notice of appeal with the Clerk's office within thirty (30) days of the date of this Order. *See* Fed. R. App. P. 4(a). A written notice of appeal is a short statement indicating a desire to appeal and including the date of the Order the petitioner wishes to appeal. Failure to file a timely notice of appeal waives the right to appeal this decision. Petitioner also must obtain a certificate of appealability ("COA") from a circuit justice or judge. *See* 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b). The Court expressly declines to issue a COA for the reasons explained in this Memorandum Opinion and Order.

The Clerk is directed, pursuant to Federal Rule of Civil Procedure 58, to enter final judgment in favor of respondent; to send a copy of this Memorandum Opinion and Order to petitioner and counsel of record for respondent; and to close this civil action.

Alexandria, Virginia
August 28, 2023

_____
Anthony J. Trenga
Senior U.S. District Judge